# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MARIO D. FREDERICK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-00446 |
| | ) | Judge Trauger |
| WILLIAM H. SLATERY, III, | ) | |
| ATTORNEY GENERAL OF | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

Mario D. Frederick, a former inmate of the Whiteville Correctional Facility in Whiteville, Tennessee, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2015 convictions and sentence for soliciting sexual exploitation of a minor under the age of thirteen, soliciting sexual exploitation of a minor, and indecent exposure. (Doc. No. 1.) The respondent, Tennessee Attorney General William H. Slatery, III, has filed an answer to the habeas petition.[1] (Doc. No. 20.) The petition is ripe for review, and this court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the court finds that an evidentiary hearing is not needed and that the petitioner is not entitled to habeas relief. The petition will be denied and this action will be dismissed.

---

[1] The petitioner named Rutherford County, Tennessee as the respondent to this action. (Doc. No. 1.) Because the petitioner is not currently in custody (discussed in greater detail below), the Attorney General of Tennessee is the appropriate respondent. *See* Rule 2 of the Rules Gov'g Section 2254 Cases ("Habeas Rules") & Adv. Comm. Note (b)(5). The court will, therefore, order the Clerk to substitute "William H. Slatery, III, Attorney General of Tennessee" as the named respondent in this case, as reflected in the above caption.

## I.    Procedural History

This case arises from a series of incidents in 2013 in which the petitioner was charged with exposing himself and masturbating in front of others in store parking lots. On December 2, 2013, the petitioner was indicted in Rutherford County, Tennessee on three counts of felony indecent exposure and six counts of misdemeanor indecent exposure. (Doc. No. 19-1 at 15-23.) The state subsequently obtained a superseding indictment charging the petitioner with three counts of soliciting sexual exploitation of a minor less than thirteen years of age (counts 1-3), two counts of soliciting sexual exploitation of a minor (counts 4-5), and four counts of misdemeanor indecent exposure (counts 6-9). (*Id*. at 24-32.) Prior to trial, the petitioner filed a motion to sever the counts in the indictment because the offenses occurred on four separate dates and involved several victims. (Doc. No. 19-1 at 53-55.) The trial court denied the motion, ruling that it was untimely and the charges were properly joined "regarding the *modus operandi* and the identity of the defendant." *State v. Frederick*, No. M2016-00737-CCA-R3-CD, 2017 WL 2117026, at *1 (Tenn. Crim. App. May 15, 2017), *no perm. app. filed*. The state subsequently dismissed counts 1 and 6. (Doc. No. 19-6 at 7.)

On August 11, 2015, the petitioner proceeded to trial. (Doc. No. 19-6.) On August 12, 2015, the jury found the petitioner guilty on all counts. (Doc. No. 19-7 at 139-40.) The trial court sentenced him to three years imprisonment on counts 2 and 3, to be served concurrently with each other, and to one and one-half years of imprisonment on counts 4 and 5, to be served concurrently with each other.[2] (Doc. No. 19-1 at 56-59.) The court made these two sentences consecutive to each other for an effective four and one-half year sentence with the Tennessee Department of Correction ("TDOC"). The trial court also sentenced the petitioner to six months imprisonment in

---

[2] These sentences were set to be served at 30%. (Doc. No. 19-1 at 56-59.)

county jail on counts 7, 8, and 9, to be served concurrently with each other, but consecutive to the felony sentences. (*Id*. at 60-62.) Thus, the petitioner's total effective sentence was five years of imprisonment divided between TDOC custody and county jail. (*Id*.)

On January 12, 2016, the petitioner filed a motion for new trial and a motion for arrest of judgment, followed by an amended motion for arrest of judgment on March 4, 2016. (*Id*. at 63-103.) The petitioner also filed a petition for post-conviction relief. (*See id*. at 102-03.) The trial court denied the post-trial motions on the merits, and it dismissed the post-conviction petition as premature in anticipation of the petitioner's direct criminal appeal. (*Id*.)

Petitioner appealed his criminal convictions. He challenged the verdict on three grounds: that the trial court erred by denying the motion to sever the counts of the indictment, by denying the motion for arrest of judgment, and by denying the motion for a new trial on grounds that the evidence was insufficient to support his convictions. *Frederick*, 2017 WL 2117026, at *1. On May 15, 2017, the Tennessee Court of Criminal Appeals ("TCCA") affirmed. Regarding the motion to sever, the TCCA found that the trial court did not err in allowing permissive joinder of the counts of the indictment because "similarities in the offenses establish that the crimes were committed with a distinct design or unique method" that was "indicative of a common scheme or plan." *Id*. at *6. The appeals court further determined that "evidence of the crimes against one of the victims would be admissible upon the trial of the others to establish the identity of the [petitioner], which was a material issue at trial." *Id*. Accordingly, the TCCA concluded that the trial court "correctly consolidated the offenses for trial." *Id*. Concerning the motion for arrest of judgment, the TCCA held that the superseding indictment was not void for misstating the *mens rea* of the crime of soliciting the sexual exploitation of a minor because it referenced the statute allegedly violated containing the correct culpable mental state, and the trial court correctly instructed the jury on the

statute's *mens rea* requirement. *Id*. at *8. Finally, the TCCA found the evidence at trial was sufficient to support the petitioner's convictions. *Id*. at *8-10. In particular, the appeals court credited the identification of the petitioner by three victims in a pretrial photographic line-up and by all five victims at trial. *Id*. at *10. The petitioner did not appeal to the Tennessee Supreme Court.[3] (Doc. No. 19-1 at 104.)

The petitioner subsequently filed a second *pro se* petition for post-conviction relief.[4] (Doc. No. 1 at 3-7; Doc. No. 1-1 at 2.) On March 28, 2018, the trial court dismissed the petition on preliminary consideration without an evidentiary hearing. (Doc. No. 1-1 at 2 (citing Tenn. Code Ann. § 40-30-106(d)). The trial court noted that petitioner had made a "bare allegation" that had "failed to state a factual basis" for constitutional violations and "failed to assert a colorable claim." *Id*. The petitioner did not appeal to the TCCA. (Doc. No. 1 at 6.)

On May 11, 2018, the petitioner timely filed the pending *pro se* petition for a writ of habeas corpus. (Doc. No. 1.) The court directed the respondent to file an answer, plead or otherwise respond to the petition in conformance with Habeas Rule 5. (Doc. No. 7.) The respondent filed the state court record and an answer to the petition, conceding that the petition is timely and urging dismissal. (Doc. Nos. 19, 20).

---

[3] According to an Affidavit from Candace J. Whitman, TDOC Director of Sentence Management Services, Petitioner was released by the state on February 23, 2018, due to "expiration of his felony sentences." (Doc. No. 20-1 at ¶ 4.) However, he was not released to Rutherford County to serve the six-month misdemeanor sentences; instead, the petitioner was released to a detainer filed with TDOC by Montgomery County, Tennessee. (*Id*.)

[4] This document has not been provided by either the petitioner or the state. However, as discussed below, it is not necessary for resolution of the instant petition.

4

## II. Summary of the Evidence

According to the TCCA's summary of the proof at the petitioner's jury trial, the first victim, twenty-seven-year-old S.C.,[5] testified that, on October 3, 2013, she was sitting in her car in the parking lot of Walgreens on Sam Ridley Parkway in Smyrna, Tennessee. *Frederick*, 2017 WL 2117026, at *1. At around 6:00 or 7:00 p.m., while it was still light outside, a "dark red SUV" pulled into the parking spot to her left. *Id*. When S.C. looked over at the SUV, she saw the petitioner sitting in the driver's seat masturbating. *Id*. S.C. testified that the windows to her car and his SUV were both rolled down and that she "could see him just plain as day." *Id*. According to S.C., the petitioner then exited his car and walked around the front of his SUV towards her while continuing to masturbate with his pants down. *Id*. The petitioner came within two feet of S.C. and stared at her without saying anything. *Id*. S.C. testified that, as she drove away the petitioner followed her around the parking lot in his SUV. *Id*. S.C. called the police and met with officers later the same day to make a report. *Id*. A few weeks later, S.C. saw the petitioner's photograph on television and contacted the police again. *Id*. S.C. identified the petitioner in a photographic line-up and at trial. *Id*. On cross-examination, S.C. testified that there were only one or two other cars in the parking lot at the time of the incident. *Id*.

On the same day, twenty-one-year-old T.G. was grocery shopping with her two-year-old daughter at the Kroger on Sam Ridley Parkway in Smyrna. *Id*. at *2. T.G. testified that, as she approached her car in the parking lot around 8:00 p.m., just as it was becoming dark outside, she noticed the petitioner watching her from his nearby parked "red" or "maroon colored" SUV with "really shiny, chrome" or "silver" wheels. *Id*. T.G. put her daughter in a car seat and got in the

---

[5] Because this case involves crimes of a sexual nature, the court refers to the victims by the same initials utilized by the TCCA.

driver's seat. *Id*. When T.G. turned on the headlights, she saw the petitioner standing three to four feet in front of her car, staring at her, masturbating with his pants down. *Id*. T.G. reversed out of the parking spot while the petitioner "was still masturbating." *Id*. She "believe[d] that [her daughter] didn't see" the petitioner because "she had a toy in her hand that she was looking at." *Id*. However, T.G. confirmed that, due to the position of the vehicle her daughter could have seen the petitioner if she was not playing with the toy. *Id*. T.G. also testified that the petitioner could clearly see her and her daughter as he approached T.G.'s car. *Id*. After the incident, T.G. wrote about it on Facebook. *Id*. She was later contacted by a friend, A.H., who told T.G. that she had a similar experience with her three-year-old daughter at the nearby Walgreens. *Id*. T.G. subsequently reported the incident and identified the petitioner in a photographic line-up and at trial. *Id*.

C.Y. testified that she was at the K-Mart in Smyrna on October 6, 2013, with her friend, S.R., and S.R.'s mother. *Id*. Both C.Y. and S.R. were sixteen years old and in high school at the time. *Id*. C.Y. testified that she and S.R. waited in the car while S.R.'s mother went inside the store. *Id*. The young women noticed an SUV – that C.Y. described as a "maroonish, burgundy Yukon" with shiny rims – circle the parking lot and park beside them. *Id*. Someone in the SUV was "staring pretty hard" at them. *Id*. C.Y. then looked over and saw the petitioner sitting in the car with the door open, silently masturbating with his pants down. *Id*. According to C.Y., the petitioner's SUV was parked so close that the young women could not open the passenger door, so they exited through the driver's side door. *Id*. C.Y. testified that the petitioner backed out of the parking spot and followed the young women as they ran into the K-Mart. *Id*. Upon finding S.R.'s mother, they called the police. *Id*. C.Y. did not pick the petitioner out in a photographic line-up during the investigation, but she identified the petitioner at the preliminary hearing and at trial. *Id*.

S.R. testified similarly to C.Y. *Id*. She recalled that the petitioner's SUV was a "maroonish colored . . . Suburban" with "really silver and really shiny" rims. *Id*. She testified that two young women were in a small car and the petitioner's SUV was "sitting up very high compared to [them]." *Id*. S.R. could not see the petitioner masturbating because her view was blocked by the car door, but she could see the petitioner's face and eyes as he stared down at them. *Id*. S.R. did not identify the petitioner in a photographic line-up during the investigation, but she identified him at the preliminary hearing and at trial. *Id*. She also identified photographs of the petitioner's SUV. *Id*.

The final victim, twenty-year-old A.H., testified that, on October 18, 2013, she was with her mother and three-year-old daughter at Walgreens on Sam Ridley Parkway in Smyrna. *Id*. A.H. and her daughter waited in the car while A.H.'s mother went inside. *Id*. A.H. was sitting in the middle row and her daughter was sitting in the third row in a forward-facing car seat. *Id*. A.H. testified that she noticed a "[m]aroon Yukon" SUV with "rims" and "tinted windows" drive past, reverse, and then pull into the parking spot next to their car. *Id*. A.H. testified that the petitioner immediately rolled his window down, looked around, exited the SUV, exposed himself, and silently masturbated without any pants on from a distance of about two or three feet. *Id*. A.H. testified that the petitioner was looking at her daughter while he was masturbating. *Id*. She distracted her daughter with a game on her phone. *Id*. The petitioner eventually stopped and drove away. *Id*. A.H. noted his license plate number, went into the store, and called the police. *Id*. She recalled seeing T.G. post on Facebook about a similar incident. *Id*. A.H. called T.G. and learned that her friend had the same description of the SUV. *Id*. A.H. identified the petitioner "immediately" in a photographic line-up, at the preliminary hearing, and at trial. *Id*. She also

identified photographs of the petitioner's SUV. *Id*. On cross-examination, A.H. testified that she believed her daughter could have seen the petitioner standing outside their car masturbating. *Id*.

Smyrna Police Department Detective Rick Hall testified that he was notified of the incident involving C.Y. and S.R on October 6, 2013. *Id*. at *3. Hall was subsequently notified about A.H.'s incident on October 18, 2013. *Id*. He obtained descriptions of the vehicle and the license plate number from A.H. *Id*. Hall discovered that the vehicle was registered to the petitioner at a location in Clarksville, Tennessee. *Id*. Hall obtained a driver's license photograph of the petitioner that matched the physical description of the perpetrator. *Id*. Hall was subsequently contacted by T.G. about the incident at Kroger. *Id*.

Hall created a photographic line-up and met with A.H. and T.G. *Id*. T.G. viewed the lineup first and identified the petitioner, noting that the photograph "mostly look[ed] like him." *Id*. A.H. arrived later; she identified the petitioner "immediately" and said that she was "99 percent" sure about her identification. *Id*. A.H. also identified a photograph of the petitioner's SUV with "100 percent" certainty. *Id*. Hall later had C.Y. and S.R. view the photographic line-up, but neither could make a positive identification. *Id*. However, they did positively identify the petitioner's SUV. *Id*. Hall testified that he then obtained arrest warrants for the petitioner and made a media release including the petitioner's photograph. *Id*. He received a tip that the petitioner was at an address in LaVergne, Tennessee, and he found the petitioner's SUV at that location. *Id*. That address was about three miles away from the Walgreens, Kroger, and K-Mart; those stores were within two miles of each other. *Id*. The petitioner was arrested when he arrived in another car. *Id*.

The petitioner testified that he was thirty-three years old and lived in Clarksville, Tennessee with his parents. *Id*. He confirmed that he drove a maroon Yukon SUV with chrome wheels and that the photographs of his SUV were accurate. *Id*. The petitioner also confirmed that the SUV

was at his girlfriend's apartment in LaVergne, where the petitioner was arrested. *Id*. However, the petitioner denied committing the charged offenses. *Id*. He testified that he "couldn't explain the[ ] mistakes" of the victims who identified him, and, on cross-examination, denied that he had ever been to Smyrna. *Id*. He also denied that anyone else drove his SUV. *Id*. Finally, the petitioner said he was "sure [he] was in Clarksville," on October 3 and 6, 2013, and "[e]ither in Clarksville or . . . with [his] girlfriend," on October 18, 2013. *Id*.

## III.    Standard of Review

### A.    Habeas Relief

The authority for federal courts to grant habeas corpus relief to state prisoners is provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Under these governing principles, state courts are considered "adequate forums for the vindication of federal rights," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), and "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Accordingly, "AEDPA . . . imposes a highly deferential standard [on the federal courts] for evaluating state-court rulings," *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted), and it acts as a "formidable barrier" to federal habeas relief for prisoners whose claims have been adjudicated in state court. *Burt*, 571 U.S. at 19.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2254(a). The availability of federal habeas relief is further restricted where

the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). AEDPA presumes that state courts "know and follow [federal] law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam). A federal court may not grant relief unless a petitioner establishes that the state court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington*, 562 U.S. at 100 (quoting 28 U.S.C. § 2254(d)) (citation omitted); *Glover v. Phillips*, No. 3:17-cv-00761, 2019 WL 2724801, at *8 (M.D. Tenn. July 1, 2019). This standard is intentionally "difficult to meet." *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013); *Harrington*, 562 U.S. at 102.

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Williams*, 529 U.S. at 409; *Hill*, 792 F.3d at 676. Under this standard, "whether the trial judge was right or wrong is not the pertinent question," *Gagne*, 680 F.3d at 513 (quoting *Renico*, 559 U.S. at 778 n.3), and "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," *Williams*, 529 U.S. at 411. Rather, a federal court must find that the state court's application was objectively

unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *see also White v. Woodall*, 572 U.S. 415, 419 (2014) (explaining that even "clear error" will not suffice).

For purposes of Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). This, too, is a "substantially high[ ] threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). The Sixth Circuit construes Section 2254(d)(2) together with Section 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary.[6] *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El*, 537 U.S. at 340). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Further, "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)). Accordingly, the pertinent question is not whether a federal court believes a state court's factual determination was incorrect, whether the "federal habeas court would have reached a different conclusion in the first instance," or whether "reasonable minds reviewing the record might disagree." *Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

Under either path to relief under Section 2254(d), even "a strong case for relief" does not necessarily mean a state court's contrary conclusion is unreasonable. *Harrington*, 562 U.S. at 102

---

[6] A state court's credibility determinations are also entitled to a presumption of correctness. *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

(citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Gagne v. Booker*, 680 F.3d 493, 513-14 (6th Cir. 2012). AEDPA "demands that state-court decisions be given the benefit of the doubt." *Renico*, 558 U.S. at 773. Indeed, "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotations and citation omitted). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To secure relief, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

## B.     Exhaustion and Procedural Default

Due to longstanding policies of comity and respect between state and federal courts, a habeas petitioner must "give the state courts the first opportunity to consider and rule upon the federal claims the prisoner wishes to use to attack [the] state court conviction." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Thus, before a federal court may review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Harrington*, 562 U.S. at 103. To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

12

"To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted). A petitioner need not cite federal law "book and verse" to the state court to fairly present a claim, *Pudelski*, 576 F.3d at 605 (citing *Picard*, 404 U.S. at 278), but the factual and legal underpinnings of the claim must be presented to "alert[ ] that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *see also Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (explaining that the substance of each federal constitutional claim must be presented to the state court, not just the facts necessary to state a claim for relief); *Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987) (a petitioner does not exhaust his state remedies for all ineffective assistance of counsel claims if the state courts are presented with only one aspect of counsel's performance).

The exhaustion requirement works together with the procedural-default doctrine, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan*, 526 U.S. at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed off any remaining state court avenue for review of the claim on the merits. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[ ] on a state law ground

that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted). The procedural default doctrine "appl[ies] alike whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 490-492 (1986)).

However, to ensure that "fundamental fairness [remains] the central concern of the writ of habeas corpus," *Strickland v. Washington*, 466 U.S. 668, 697 (1984), courts recognize an equitable exception by which a petitioner may overcome a procedural default and receive federal habeas review. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). To overcome a procedural default, a petitioner may show "good cause for the default and actual prejudice from the claimed error." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)); *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) (citing *Coleman*, 501 U.S. at 754).

A petitioner may establish cause by "show[ing] that some objective factor external to the defense" – a factor that "cannot be fairly attributed to" the petitioner – "impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id*. Attorney error does not constitute cause unless it is constitutionally ineffective assistance of counsel. *Edwards*, 529 U.S. at 451-52; *Benton*, 942 F.3d at 307-08; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). Generally, however, a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.[7] *Murray*, 477 U.S. at 489.

---

[7] If the ineffective-assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards*, 529 U.S. at 452-53.

Ineffective assistance of post-conviction counsel may establish cause under two circumstances. First, the complete abandonment by counsel during state post-conviction proceedings without notice to a petitioner may establish cause to excuse default. *Maples v. Thomas*, 565 U.S. 266, 288-89 (2012). Second, the ineffective assistance of post-conviction counsel may establish the cause needed to excuse procedural default regarding substantial claims of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *see also Sutton*, 745 F.3d at 792 (holding that *Martinez* and *Trevino* apply in Tennessee).

If cause is established, a petitioner must also demonstrate actual prejudice.[8] To do so, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This means that "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (citations omitted); *Frady*, 465 U.S. at 170. "[T]he prejudice component . . . is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Rust*, 17 F.3d at 161-62.

In the alternative, because cause and prejudice is not a perfect safeguard against fundamental miscarriages of justice, a court may overlook those requirements if a petitioner presents an "extraordinary case" whereby a constitutional violation "probably resulted" in the conviction of someone who is "actually innocent" of the substantive offense. *Dretke*, 541 U.S. at

---

[8] If a petitioner fails to establish cause, a court need not address the issue of prejudice. *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

15

392; *Benton*, 942 F.3d at 307. The petitioner's burden on this claim is "extraordinarily high." *House v. Bell*, 547 U.S. 518, 555 (2006) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). Actual innocence requires a petitioner to demonstrate that it is more likely than not that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The court's function "is not to make an independent factual determination about what likely occurred," but rather "to assess the likely impact of the [total] evidence on reasonable jurors." *Bell*, 547 U.S. at 538.

## IV. Analysis

The petitioner asserts four grounds for habeas relief. First, he claims that trial counsel provided constitutionally ineffective assistance. (Doc. No. 1 at 5-6.) Next, the petitioner claims that the state prosecutor engaged in misconduct during jury selection. (*Id*. at 6-8.) Third, the petitioner claims the trial court improperly denied his motion for a new trial because the weight of the evidence did not support a guilty verdict. (*Id*. at 8-9.) Finally, he claims that the trial court erred in denying the motion to arrest judgment. (*Id*. at 8-11.)

### A. Subject-Matter Jurisdiction

As a threshold matter, the state contends that the court does not have subject-matter jurisdiction to consider any of the petitioner's claims because he does not fulfil the "custody" requirement of 28 U.S.C. § 2254. (Doc. No. 20 at 11-12.) The state argues this is so because (1) the petition was filed after the petitioner was released from prison upon the expiration of his felony sentences, and (2) the petitioner was released to a Montgomery County detainer rather than to the Rutherford County jail to serve the consecutive six-month sentence. *Id*. The state's unpersuasive argument appears to somewhat conflate the "in custody" requirement and the doctrine of mootness. For the sake of clarity, the court briefly addresses both issues.

First, Section 2254 provides that a court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See also Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) ("[T]he habeas petitioner must be 'in custody' under the conviction or sentence under attack at the time his petition is filed.") In other words, "the writ of habeas corpus exists to allow a petitioner to attack and secure release from illegal custody." *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 479 (6th Cir. 2009) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "[A] prisoner serving consecutive sentences generally is considered 'in custody' for purposes of federal habeas corpus with respect to any of the consecutive sentences regardless of which sentence was served first or whether one of the sentences has expired." *Sargent v. Duckworth*, 172 F.3d 49, 1998 WL 898876, at *2 (6th Cir. 1998) (citing *Garlotte v. Fordice*, 515 U.S. 39, 45-46 (1995)).

Actual physical custody is sufficient but not necessary to satisfy the custody requirement. *Lawrence*, 560 F.3d at 479 (citing *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). Moreover, the Sixth Circuit has concluded that, in the case of consecutive sentences, a detainer is not necessary to a finding that petitioner is "in custody" for purposes of habeas corpus jurisdiction. *Sargent*, 1998 WL 898876, at *2. In *Sargent*, the court of appeals held that the state had "exercise(d) some control over the petitioner . . . when it obtained custody over [the] petitioner to try him upon the crimes for which he ultimately was sentenced," *id*. (quoting *Stacey v. Warden, Apalachee Corr. Inst.*, 854 F.2d 401, 403 (11th Cir. 1988) (per curiam)), and that "it is reasonable to expect that [the state] w[ould] seek to enforce its [consecutive] sentence in the future." *Id*. The court observed that, absent such a conclusion, the state "could indefinitely delay the adjudication of [the] petitioner's habeas claims simply by refusing to file a detainer," and that the petitioner's

habeas challenge to his convictions "might later be precluded under the statute of limitations now applicable to § 2254 petitions unless he is deemed 'in custody.'" *Id.* (citing 28 U.S.C. § 2244(d)(1)). Accordingly, the court found the petitioner to be "in custody" under Section 2254 for a future consecutive sentence in the absence of a detainer. *Id.*; *see also Frazier v. Wilkinson*, 842 F.2d 42, 44-45 (2d Cir. 1988) (concluding that habeas corpus lies to challenge a future sentence absent a detainer where "there is a reasonable basis to apprehend that the jurisdiction that obtained the consecutive sentence will seek its enforcement").

Here, the "in custody" requirement is similarly satisfied. Tennessee has exercised control over the petitioner by trying him together on both felony and misdemeanor charges. The respondent has offered no evidence that the petitioner has served his consecutive six-month misdemeanor sentence in Rutherford County. (*See* Doc. No. 20.) Nor has the respondent demonstrated a reasonable expectation that Tennessee or Rutherford County authorities will not seek to enforce the petitioner's six-month sentence. (*See id.*) Accordingly, regardless of whether a formal detainer has yet been filed by Rutherford County, the court concludes that the petitioner is still sufficiently "in custody" on his consecutive sentence for purposes of Section 2254. The court thus has jurisdiction to consider the petition.

Second, the petition is not moot. Article III, Section 2 of the United States Constitution authorizes the federal judiciary only to hear cases or controversies, and therefore federal courts may not exercise jurisdiction when the controversy has been mooted, that is to say, when the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The United States Supreme Court has found that a writ of habeas corpus issued pursuant to an unlawful criminal conviction includes relief not only from the conviction's

18

direct consequences (e.g., incarceration), but also from its collateral consequences (e.g., inability to engage in certain businesses, vote, or serve as a juror). *Spencer v. Kemna*, 523 U.S. 1, 8 (1998). Accordingly, the Sixth Circuit has held that a petitioner's release from custody does not render a habeas petition moot due to "the continuing collateral consequences to a wrongful criminal conviction." *Gentry v. Deuth*, 456 F.3d 687, 693-94 (6th Cir. 2006) (collecting cases); *see also Gillispie v. Warden, London Corr. Inst.*, 771 F.3d 323, 329 (6th Cir. 2014) (quoting *Gall v. Scroggy*, 603 F.3d 346, 353 (6th Cir. 2010) ("The federal court retains jurisdiction to afford . . . relief until the unconstitutional judgment is gone"); *Green v. Arn*, 839 F.2d 300, 301-02 (6th Cir. 1988) (concluding that a habeas petition was not mooted by the petitioner's release from prison prior to the court's determination because the petitioner could still face "significant collateral consequences flow[ing] from a criminal conviction"). Accordingly, the petitioner's Section 2254 petition has not been mooted by his release from state custody after expiration of his felony sentences.

The court now examines each claim raised in the petition.

**B.      Claim One: Ineffective Assistance of Counsel**

The petitioner describes his first ground for relief as "ineffective legal counsel." (Doc. No. 1 at 5.) As "supporting facts" for this claim, the petitioner states that he requested appointment of new counsel by letter on January 26, 2015, and by motion in March 2015. *Id*. He explains that the trial judge denied the motion at a hearing on April 8, 2015, and advised the petitioner that he could hire a private attorney, represent himself, or "work something out" with trial counsel. *Id*. The petitioner also vaguely directs the court to "see attachment." *Id*. Attached to the petition is an unorganized, 583-page collection of documents and transcripts, one page of which is a January 26, 2015, letter from the petitioner to the trial judge requesting new counsel. (Doc. No. 1-1 at 70.) The

19

respondent contends this claim is inadequately pleaded and procedurally defaulted. (Doc. No. 20 at 12-16.)

The petitioner is not entitled to relief on this claim for two reasons. First, this claim is conclusory and does not state a claim upon which relief can be granted. Habeas Rule 2(c) provides that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." The rule is even "more demanding" than Rule 8 of the Federal Rules of Civil Procedure, *Jarvis v. Hollway*, 2016 WL 454777, at *13 (M.D. Tenn. Feb. 4, 2016) (quoting *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005)), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also McFarland v. Scali*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in part) ("[T]he habeas petition, unlike a complaint, must allege the factual underpinnings of the petitioner's claims."); Habeas Rule 4 Advisory Comm. Note (explaining that "notice" pleading is not sufficient because the habeas petition is expected to state facts that point to a "real possibility of constitutional error"). Accordingly, a conclusory claim for habeas relief that sets forth insufficient facts may summarily be dismissed. *Edwards v. Johns*, 450 F. Supp. 2d 755, 756 (E.D. Mich. 2006).

Here, the petition mentions only that the petitioner's attempt to secure new counsel was denied. It offers no supporting facts concerning any specific ineffective assistance of counsel that prejudiced the petitioner. The petitioner's vague reference to the January 26, 2015, letter does not salvage this claim. The letter – written seven months before trial – generally questioned whether trial counsel was putting forth his "best efforts," expressed concerns about trial counsel's motives, noted that client and counsel had different views about the case, and complained about various aspects of the case including discovery delays and excessive bond. (Doc. No. 1-1 at 70.) The letter did not describe any specific errors or omissions by trial counsel that respondent or the court can

evaluate against applicable constitutional standards. Nor does a vague direction to the remainder of the nearly 600 pages of trial evidence and transcripts attached to the petition.[9] This claim, therefore, does not satisfy the pleading requirements of Habeas Rule 2. *See, e.g.*, *Creech v. Taylor*, No. 13-1 65, 2013 WL 6044359, at *3 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support").

Second, this claim is procedurally defaulted. The petitioner did not raise ineffective assistance of counsel on his direct criminal appeal, and he failed to appeal the summary dismissal of his state post-conviction petition to the TCCA. Thus, he has not "fairly presented" this claim through "one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845, 848; *Adams*, 330 F.3d at 402. Tennessee law "generally bars second postconviction proceedings," *In re Hall*, 795 F. App'x at 944, and the time for the petitioner to raise this claim in the state courts has passed. *See* Tenn. Code Ann. §§ 40-30-102(a), (c); 40-30-106(g). Further, none of the limited statutory provisions for reopening a first postconviction proceeding applies in the petitioner's case. *See id*. § 40-30-117. Thus, this claim is technically exhausted but procedurally defaulted because it can no longer be presented to the Tennessee courts. *Atkins*, 792 F.3d at 657.

There is no apparent reason to excuse this procedural default. Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial. *Martinez*, 566 U.S. at 9; *Sutton*, 745 F.3d at 792. The same is true if "the state courts did not appoint counsel in the initial-review collateral proceeding," *Martinez*, 566 U.S. at 14, as is the case here. (Doc. No. 1 at 4.)

---

[9] One page of these voluminous exhibits contains hand-written references to "ineffective legal counsel" and to pages 113 to 118 of the August 12, 2015 trial transcript. (*See* Doc. No. 1-1 at 1.) However, there is no explanation regarding what the petitioner complains of on those pages, *see id*., and none is readily apparent to the court. That portion of the trial transcript contains part of the direct examination of state witness C.Y. (Doc. No. 19-6 at 113-118.)

Nonetheless, the petitioner is not entitled to relief under *Martinez*. *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court. *Jones v. Perry*, No. 3:16-CV-02631, 2020 WL 3439137, at *7 (M.D. Tenn. June 23, 2020) (citing *Coleman*, 501 U.S. at 750) (explaining that, under *Martinez*, a petitioner must still show he was "prejudiced by the deficiency"); *Atkins*, 792 F.3d at 660 (explaining that, under *Martinez*, the district court must determine "whether [the petitioner] can demonstrate prejudice"). Thus, in many habeas cases, "it is more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Thorne v. Hollway*, No. 3:14-CV-0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014), *aff'd sub nom. Thorne v. Lester*, 641 F. App'x 541 (6th Cir. 2016).

Here, the answer to that question resolves the petitioner's claim. To establish prejudice, the petitioner must demonstrate a "reasonable probability" that the result of the trial would have been different but for counsel's unprofessional errors. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Because the petitioner has not adequately explained his ineffective assistance claim, it is not possible for the court to conclude that the petitioner was actually prejudiced by any specific actions or omissions of trial counsel. Accordingly, the petitioner's ineffective assistance claim is not "substantial" under *Martinez*.

The petitioner, therefore, is not entitled to habeas relief on this claim.

## C. Claim Two: Prosecutorial Misconduct

In his second claim, the petitioner contends that the prosecutor engaged in misconduct during jury selection. (Doc. No. 1 at 6-8.) Specifically, the petitioner argues that Assistant District Attorney General Ammerman improperly asked potential jurors during *voir dire* if they had

children and struck jurors that did not have children, resulting in a jury of people who had children. *Id*. The petitioner asserts this was improper, "given the nature of the offenses being tried." *Id*. The respondent contends this claim is procedurally defaulted. (Doc. No. 20 at 16-17.)

The petitioner did not raise this claim on direct criminal appeal, and he failed to appeal the summary dismissal of his state post-conviction petition to the TCCA. Thus, he has never, as required, presented this claim to the TCCA. *O'Sullivan*, 526 U.S. at 845, 848; *Adams*, 330 F.3d at 402. The time for the petitioner to raise this claim to the Tennessee state courts has passed, Tenn. Code Ann. §§ 40-30-102(a), (c); 40-30-106(g), and none of the limited statutory exceptions apply. *See id*. § 40-30-117. Thus, this claim is also technically exhausted but procedurally defaulted.

The petitioner has offered no basis to excuse this default. He suggests that trial counsel "filed [the] direct appeal without consulting with [petitioner] beforehand." (Doc. No. 1-1 at 7.) This, however, is insufficient. Attorney error does not constitute cause to overcome a default unless it is constitutionally ineffective assistance of counsel, *Edwards*, 529 U.S. at 451-52; *Benton*, 942 F.3d at 307-08, that is presented to the state courts as an independent claim before being used to establish cause for the procedural default. *Carpenter*, 529 U.S. at 452; *Murray*, 477 U.S. at 489. As discussed above, the petitioner failed to adequately present an ineffective assistance of counsel claim to the state courts. Nor has the petitioner demonstrated cause and prejudice with respect to an ineffective assistance claim sufficient to allow it to be used as cause to excuse the default of the prosecutorial misconduct claim. *Edwards*, 529 U.S. at 452-53.

Even if the court were to reach the merits of this claim, however, the petitioner would not be entitled to relief. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Equal Protection Clause prohibits purposeful racial discrimination in the selection of a jury. The Supreme Court later extended the Equal Protection Clause to forbid the use of peremptory challenges to eliminate jurors on the basis of gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127

23

(1994). Under this authority, the reason for a challenged peremptory strike does not have to be valid "in any sense other than being race-neutral [or gender-neutral], nor does it have to relate to the case being tried." *United States v. Cobb*, 185 F.3d 1193, 1196 n.2 (11th Cir. 1999). Accordingly, the Supreme Court "has never forbidden strikes based on motherhood, marital status, age, or age of children." *Ellis v. Ficano*, 73 F.3d 361, 1995 WL 764127, at *10 (6th Cir. 1995). Indeed, the presence or absence of children is a neutral reason for peremptory strikes.[10] *See, e.g.*, *United States v. Atkins*, 843 F.3d 625, 636-38 (6th Cir. 2016) (suggesting that *voir dire* questions about jurors' children, including number thereof, are appropriate and could yield "highly relevant information" if utilized in a neutral manner); *United States v. Thompson*, 450 F.3d 840, 844 (8th Cir. 2006) (affirming denial of *Batson* challenge based on proffered reason that, among other things, juror was young, lacked life experience, did not have children, and was not married); *United States v. Munoz*, 15 F.3d 395, 399 (5th Cir. 1994) (upholding a government strike of a juror because "she had children on welfare and apparently was unemployed"); *United States v. Hughes*, 970 F.2d 227, 231 (7th Cir. 1992) (upholding a government strike of a juror because she was young, unemployed, from an unstable background and an unmarried mother of three).

Here, the petitioner does not claim that Assistant District Attorney General Ammerman conducted *voir dire* in a manner that discriminated on the basis of race or gender. Rather, the petitioner is dissatisfied that the prosecutor asked prospective jurors whether or not they had children. Without more, however, this line of general *voir dire* questioning and related peremptory

---

[10] Tennessee courts follow *Batson* and its progeny. *See State v. Stout*, No. 02C019812CR00376, 2000 WL 202226, at *8-9 (Tenn. Crim. App. Feb. 17, 2000), *aff'd*, 46 S.W.3d 689 (Tenn. 2001). In evaluating the propriety of peremptory strikes, Tennessee courts "look to the totality of the circumstances, for rarely will a party admit that its purpose in striking a juror was discriminatory. Accordingly, the trial court may infer discriminatory intent from circumstantial evidence." *Id.* at *9.

24

strikes does not offend the Constitution. Based on the court's review of the totality of the circumstances, the petitioner is not entitled to habeas relief on this claim.

### D. Claim Three: Motion for a New Trial Based on the Weight of the Evidence

The petitioner next claims that the trial court erred in denying the motion for a new trial because the weight of the evidence was insufficient. First, the petitioner claims, particular to counts 2 and 3, that the mothers did not testify that their minor children witnessed the alleged sexual acts. (Doc. No. 1 at 8). Second, he claims that the identification evidence did not support the guilty verdicts on all counts. (*Id.*) More specifically, he contends that "only one" of the five witnesses had positively identified him, and each witness was shown "only photographs of [the petitioner's] vehicle" without an array of other vehicles. *Id.* On a hand-written page included in the exhibits to the petition, the petitioner also appears to complain that the pictures of his vehicle shown to witnesses were taken by law enforcement at Fort Campbell, Kentucky (not at the locations of the crimes in Smyrna), and that he was not "seen in the town of Smyrna" before, during, or after October 2015 by law enforcement. (Doc. No. 1-1 at 1.) The respondent contends this claim is procedurally defaulted in part, and he argues that the TCCA's resolution of the exhausted portion of this claim was not an unreasonable application of federal law. (Doc. No. 20 at 17-19.)

As an initial matter, the court finds that this claim is fully exhausted. The respondent's reading of the petitioner's direct criminal appeal is too narrow. There, the TCCA explained that the petitioner challenged his convictions on counts 2 and 3 on the ground that there was insufficient proof that the acts were intended to be seen by the young children or could be seen by those children. *Frederick*, 2017 WL 2117026, at *8-9. The petitioner also challenged his convictions on all counts by contending there was insufficient evidence "to prove his identity." *Id.* The instant habeas claim goes to these same two contentions – insufficiency of evidence concerning awareness

of the minor children and the petitioner's identity. Because the petitioner sufficiently presented this claim to the state courts "under the same theor[ies] in which it is later presented in federal court," *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998), the court may consider the merits of this entire claim.

For sufficiency of the evidence challenges, habeas relief is warranted "only where the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (internal quotation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). The court's analysis of a petitioner's exhausted insufficient-evidence claim in the habeas context is doubly deferential: "First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker*, 541 F.3d at 656. This review imposes a "standard . . . so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Jurors have "broad discretion in deciding what inferences to draw from the evidence," and when there are "a number of plausible ways to interpret the record," the state court's interpretation must not be disturbed by a habeas court as long as it is among those plausible interpretations. *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam); *Renico*, 559 U.S. at 778.

26

The Supreme Court has explained how constrained a federal habeas court's review in these circumstances is:

> The opinion of the Court in *Jackson v. Virginia* makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (internal citations omitted). Accordingly, a federal court reviewing the sufficiency of the evidence on habeas review may not re-weigh evidence. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Waterford v. Washburn*, No. 3:19-cv-00651, 2020 WL 1923235, at *9 (M.D. Tenn. Apr. 21, 2020). Here, the TCCA applied this correct legal standard to the petitioner's sufficiency of the evidence claim. *See Frederick*, 2017 WL 2117026, at *8 (quoting *Jackson*, 443 U.S. at 319).

### 1.     Counts 2 and 3

The petitioner first challenges whether there was sufficient evidence to allow the jury to conclude that the acts charged in counts 2 and 3 were intended to be seen by the young children or could be seen by those children. The TCCA began its analysis by defining the offense of soliciting sexual exploitation of a minor under Tennessee law:

> Tennessee Code Annotated section 39-13-529(b)(1) (2013) defines the offense of soliciting sexual exploitation of a minor as a person over the age of eighteen directly and intentionally engaging in sexual activity for the purpose of having the minor view the sexual activity, including circumstances where the minor is in the presence of the person. Additionally, if the minor is less than thirteen years old, the violation is a Class C felony. *Id.* § 39-13-529(f)(2) (2013). As relevant here, the term "sexual activity" includes "[m]asturbation." *Id.* § 39-13-529(e)(4)(B) (2013). A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* § 39-11-302(a).

*Id.* at *9. The TCCA then considered the evidence presented at trial. Regarding count 2, the TCCA found:

> The evidence presented at trial supported a finding that the [petitioner] did act for the purpose of having the minor view the sexual activity. T.G. testified that the [petitioner] watched her and her two-year-old daughter from his SUV as they walked past him and approached their car in the Kroger parking lot. T.G. also testified that, once she and her daughter were inside their car, the [petitioner] exited his SUV and masturbated in front of T.G.'s car while staring at her. The evidence shows that the [petitioner] knew the child was with T.G. and then chose to engage in the sexual act in front of the child.

*Id.* Regarding count 3, the TCCA found:

> [T]here is no evidence that A.H.'s daughter could not see the [petitioner]. Rather, A.H. testified that her daughter could see the [petitioner]. . . . A.H. testified that the [petitioner] parked next to her car in the Walgreens parking lot, exited his SUV, and began masturbating while staring at A.H.'s daughter, who was sitting in the back seat.

*Id.* The TCCA determined that, based on this evidence, a rational juror could conclude that the petitioner intentionally engaged in sexual activity for the purpose of having the young children view the activity. *Id.* Thus, the TCCA concluded that, "[v]iewed in the light most favorable to the State, the evidence at trial support[ed] the [petitioner's] convictions for counts two and three." *Id.*

The TCCA's findings are not objectively unreasonable. First, the court must presume the correctness of the TCCA's factual determinations because the petitioner makes no attempt to

challenge them with clear and convincing evidence. Regardless, the trial record confirms these determinations. It reflects that T.G. testified that the petitioner was watching her and her two-year old child as they returned to their vehicle; there was "no chance" the petitioner did not see her child; it would have been possible for the petitioner to see her daughter sitting in the car; the petitioner stood three to four feet away from the car, exposed himself, and masturbated; and T.G.'s daughter could have seen the petitioner if not occupied with a toy. (Doc. No. 19-6 at 63-86.) The record also reflects that A.H. testified the petitioner got out of his vehicle, exposed himself, and masturbated several feet away from A.H. and her daughter for several minutes; the petitioner looked at her three and one-half year old daughter while masturbating; A.H. tried to distract her daughter with a cell phone; and A.H.'s daughter was in a booster seat on same line of sight as the petitioner during the incident. (*Id*. at 150-176.)

Second, it was not unreasonable for the TCCA to conclude that, based on this evidence, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As highlighted by the TCCA, the Tennessee solicitation of sexual exploitation of a minor statute does not require that the minor victim actually see the sexual activity, only that the petitioner intentionally engaged in the sexual activity for the purpose of having the minor view it, "including circumstances where the minor is in the presence of the person." Tenn. Code Ann. § 39-13-529(b)(1). Further, the Sixth Circuit has made clear that "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 824 (6th Cir. 2006) (citations omitted); *Brooks v. Steward*, No. 3:12-CV-00998, 2013 WL 392602, at *14 (M.D. Tenn. Jan. 31, 2013). Here, both T.G. and A.H. testified to circumstances in which the petitioner masturbated while watching or looking directly at their young children, while in close proximity to the children, when

the children had the opportunity to see the petitioner. These are sufficient circumstances from which a rational jury could plausibly conclude the elements of counts 2 and 3 were satisfied.[11] Accordingly, the TCCA's denial of relief on this ground was not unreasonable.

### 2. Proof of Identity on All Counts

The petitioner also makes several arguments in support of the claim that there was insufficient evidence of his identity on any count.[12] The Sixth Circuit "has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker*, 541 F.3d at 658-59; *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner committed crime was constitutionally sufficient to sustain conviction, despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that testimony of the victim is sufficient to support a conviction, even if the only evidence); *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."). The TCCA appropriately relied upon this principle by noting that "[t]he credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made"; and

---

[11] To the extent the petitioner may have conceived of this claim as a challenge to the credibility of T.G. and A.H., "a challenge based on witness credibility goes to the *quality* of the government's evidence and not to the *sufficiency* of the evidence, and as such is not cognizable on habeas review." *Brooks*, 2013 WL 392602, at *14 (emphasis in original) (citing *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002)).

[12] As a threshold matter, the petitioner has not made a claim that trial counsel should have moved to suppress any identification or that the trial court improperly denied a motion to suppress. To the extent that the petitioner may claim that any identification of his vehicle was unduly suggestive, such a claim is procedurally defaulted. It also fails, because, "under the totality of the circumstances, the witnesses' identification[s are] nevertheless reliable." *Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977); *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). Specifically, each witness provided similar descriptions at trial of the petitioner's vehicle based on witnessing the vehicle from only a few feet away. (*See* Doc. No. 19-6.) Here, the court considers only the petitioner's claim about the sufficiency of the evidence identifying him as the perpetrator.

"the testimony of a victim, by itself, is sufficient to support a conviction." *Frederick*, 2017 WL 2117026, at *10 (citing *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999); *State v. Strickland*, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993); *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)). The TCCA also observed that the identification of a defendant is a question of fact for the jury after considering all the relevant proof. *Id.* (citing *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005).

Applying these principles, the TCCA concluded that the identification evidence introduced at trial was sufficient to sustain the petitioner's convictions. *Id.* at *10. The TCCA highlighted testimony from all five victims identifying the petitioner at trial as the perpetrator, as well as the fact that three of the victims identified the petitioner in a pre-trial photographic line-up. The appeals court determined that this testimony, alone, was sufficient to sustain the petitioner's convictions. *Id.* After finding that the jury "resolved any inconsistencies or credibility issues with their verdict," the TCCA declined to "reweigh or reevaluate the evidence." *Id.*

The TCCA's conclusion is not objectively unreasonable. First, the court again presumes the correctness of the TCCA's factual determinations, because the petitioner does not challenge them with clear and convincing evidence. Regardless, the trial record confirms that the five victims positively identified the petitioner at trial (Doc. No. 19-6 at 43-44, 79-80, 112, 139, 163-64), and testified that the petitioner had looked at them from only a few feet away. (*See id.* at 40, 72-75, 107-16, 130-32, 156-57.) For example, S.R. testified the petitioner stared at her from within arm's length: "I could see his face. I could see his eyes. And that's what scared me is how – the way he was staring at me." (*Id.* at 131-32.) Similarly, T.G. testified that the petitioner stared directly at her from a distance of three to four feet while illuminated by car headlights. (*Id.* at 65, 71-72.) Furthermore, three victims identified the petitioner at the preliminary hearing (*id.* at 117, 136,

168); three victims identified the petitioner in photographic line-ups prior to trial (*id.* at 41-42, 79-80, 163-64); one victim identified the petitioner "without a shadow of a doubt" from a photograph on television (*id.* at 41-42); one victim found it "easy" to identify the petitioner's vehicle from a photograph (*id.* at 139-40); and all the victims gave very similar descriptions of the petitioner's vehicle at trial (*id.* at 35-36, 75-76, 106-07, 127-28, 153-54).

Second, it was not unreasonable for the TCCA to conclude that, based on this evidence, a rational trier of fact could have found that the petitioner was the person who committed the charged crimes beyond a reasonable doubt. The testimony of the five victims specifically identifying the petitioner as the perpetrator, and accurately describing the vehicle used in the crimes that belonged to the petitioner, was alone sufficient for the jury to sustain a guilty verdict. *Tucker*, 541 F.3d at 658-59. The court presumes that any conflicting inferences regarding identification now suggested by the petitioner were resolved by the jury "in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992). Thus, the petitioner's particular complaints are largely of no moment to the sufficiency-of-the-evidence inquiry before the court. The petitioner's identity and guilt were plausible conclusions, given the evidence at trial, and the court certainly cannot conclude that no rational jury could have found the petitioner to have been the guilty party. Accordingly, the TCCA's denial of relief on this ground was not unreasonable.

Accordingly, the petitioner is not entitled to habeas relief on this claim.

### E.    Claim Four: Motion to Arrest Judgment

The petitioner's final claim concerns the trial court's denial of the motion to arrest judgment. (Doc. No. 1 at 10-11.) While the petitioner has not explained this claim in detail, he has checked the box indicating that he raised the issue in the state courts. On direct appeal, the petitioner argued that the motion to arrest the indictment should have been granted because the

superseding indictment stated the incorrect *mens rea* for counts 1-5. *Frederick*, 2017 WL 2117026, at *7-8. He contended that the superseding indictment, therefore, failed to properly charge those offenses. *Id*. Given the court's mandate to liberally-construe *pro se* filings, the court assumes that the petitioner intends to raise the same claim that he raised before the TCCA.[13] Accordingly, this claim is exhausted. The respondent contends that the TCCA's determination of this issue was not unreasonable. (Doc. No. 20 at 24-25.)

The TCCA acknowledged that the superseding indictment misstated the *mens rea* requirement for counts 1-5 by requiring the petitioner to "knowingly," instead of "intentionally," engage in the prohibited sexual activity. *Frederick*, 2017 WL 2117026, at *8. However, the appeals court held that the superseding indictment was not void because it referred to the relevant statute from which the correct culpable mental state could be ascertained, and the trial court instructed the jury on the correct *mens rea* requirement. *Id*. Thus, the TCCA concluded the petitioner was not entitled to relief. *Id*.

The Sixth Amendment to the United States Constitution secures to a criminal accused the fundamental right to be informed of the nature and cause of the accusations against him. The Sixth Amendment guarantees all criminal defendants in state prosecutions the right "to be informed of the nature and cause of the accusation."[14] *Argersinger v. Hamlin*, 407 U.S. 25, 27-28 (1972); U.S. Const. amend. VI. The Supreme Court has found that "notice of the specific charge, and a chance to be heard in a trial of the issues raised by the charged" are among the procedural due process

---

[13] This conclusion is bolstered by a hand-written page included in the exhibits to the petition that states the motion to arrest judgment should have been granted because the indictment "did not charge an offense for the culpability that the defendant acted intentionally." (Doc. No. 1-1 at 1.)

[14] The requirement that a defendant in a criminal case be charged by an indictment issued by a grand jury arises from the Fifth Amendment and is a constitutional protection that does not apply to the states. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972).

rights of every accused in a criminal proceeding in all courts. *Cole v. Alabama*, 333 U.S. 196, 201 (1948). Notice is sufficient when it enables the defendant "to identify the issues on which a decision may turn." *Lankford v. Idaho*, 500 U.S. 110, 126 n.22 (1991); *see also Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (fair notice is given if an offense is described with "some precision and certainty" so as "to apprise the accused of the crime of which he stands charged"). Thus, "a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review," if the indictment has "sufficient information to provide petitioner with adequate notice and the opportunity to defend and protect himself against future prosecution for the same offense." *Roe v. Baker*, 316 F.3d 557 (6th Cir. 2002) (citing *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding." *Mira*, 806 F.2d at 639; *see also Crawford v. Parker*, No. 2:11-cv-50, 2014 WL 1796326, at *7 (E.D. Tenn. May 6, 2014) (adopting report and recommendation) ("It is settled that 'an indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable on habeas corpus.'"). For example, an indictment is not insufficient if it omits a *mens rea* requirement and relies on reference to the principal statute, because the defendant can "locate[] the statutes and determine[] the mental states required for the offenses with which he was charged." *Williams v. Haviland*, 467 F.3d 527, 535-36 (6th Cir. 2006), Likewise, misstatement of a *mens rea* requirement in an indictment that provides otherwise sufficient notice will not support a habeas claim. *See, e.g.*, *Warner v. Zent*, 997 F.2d 116, 130 (6th Cir. 1993) (collecting cases and affirming denial of habeas claim concerning overstatement of *mens rea* in indictment).

Here, even though the TCCA did not explicitly cite federal law, its decision is not contrary to this clearly established federal rule. A state court need not cite to or even be aware of Supreme

Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). The TCCA relied on Tennessee law that reflects the constitutional procedural due process rule of "fair notice" to the accused. *See Frederick*, 2017 WL 2117026, at *7 (citing *State v. Hammonds*, 30 S.W.3d 294, 302 (Tenn. 2000) (explaining that an indictment is valid if it contains sufficient information (1) to enable the defendant to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the defendant against double jeopardy); *see also id*. at *8 (citing *Hammonds*, 30 S.W.3d at 300 (stating that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements").

The court concludes that the TCCA's rejection of the petitioner's argument was not unreasonable. The petitioner's initial indictment accused him of acting "intentionally." (Doc. No. 19-1 at 15-23.) Counts 1-5 of the superseding indictment incorrectly accused the petitioner of acting "knowingly" (*id*. at 24-28), but those counts expressly charged the petitioner with violating Tenn. Code Ann. § 39-13-529. That statute clearly requires a defendant to act "intentionally." *Id*. § 39-13-529(a). This statutory reference sufficiently "informed [the petitioner] of the nature of the accusations against him with such definiteness and certainty as to instruct him of the crime with which he was charged." *Combs v. Mills*, No. 2:08-cv-120, 2009 WL 3152805, at *7 (E.D. Tenn. Sept. 25, 2009).

Furthermore, the trial record reflects that the petitioner's counsel was fully prepared to defend these charges. Defense counsel argued the correct *mens rea* in his closing argument: "And [the element] that the Defendant acted intentionally. Ladies and gentlemen, it means that he acted intentionally with the purpose of having the minor view the sexual activity. You can't make this

35

up. . . . He must have acted purposefully using the community standard, once again, [that] hasn't been established. . . . Did he act intentionally . . . He didn't." (Doc. No. 19-7 at 107-108.) Finally, the trial judge properly and repeatedly instructed the jury concerning the correct *mens rea*. (*See id.* at 65 (instructing jury that the fifth element of the crime of soliciting sexual exploitation of a minor under thirteen is that "the defendant acted intentionally"); *id.* at 66 (defining intentionally); *id.* at 67 (instructing jury that the fourth element of the crime of soliciting sexual exploitation of a minor is that "the defendant acted intentionally); *id.* at 68 (defining intentionally)). Accordingly, there is no evidence in the record that the petitioner did not receive constitutionally-adequate notice of the charges against him, was hindered from defending the charges against him by the superseding indictment, or that the jury considered incorrect elements of those charges.

The petitioner is not, therefore, entitled to habeas relief on this claim.

## V. Conclusion

For the reasons set forth herein, Mario D. Frederick's claims either fail on the merits or are procedurally defaulted. Accordingly, the petition under Section 2254 will be denied, and this action will be dismissed with prejudice. Because jurists of reason could not disagree with the court's resolution of Frederick's claims, the court will deny a certificate of appealability.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge

36